LittletoN, Judge,
delivered the opinion of the court:
Plaintiff, a former member of the United States Army, brings this action to recover additional pay alleged to be due him for the period August 19,1943, the date of his enlistment, through January 28,1952, the date on which he was granted an honorable discharge in lieu of the dishonorable discharge which was issued and received by plaintiff upon his separation from the service on July 9,1945.
Plaintiff, although at the time over-age for Selective Service, enlisted in August 1943, in response to the Army’s need for certain specialists in scarce categories, the qualifications for which plaintiff claimed to possess. Upon his assignment to a training unit he protested his rank of private and the failure of the Army to give him a special service assignment to which he contended he was entitled under a pre-enlistment covenant with the Army. Plaintiff persisted in this connection, and investigations as to his status were conducted by the Army. He received numerous assignments and attained the rank of corporal, but he remained dissatisfied.
In the spring of 1945, during one of these investigations by the Army, certain irregularities in connection with plaintiff’s enlistment were brought to light with the result that he was charged with fraudulent enlistment and he was thereupon tried by a general court-martial. The evidence adduced at this trial showed that at the time plaintiff enlisted he answered “No” to questions as to whether or not he had previously been convicted of any crime (finding 4). The evidence further showed that the plaintiff in 1938 had been convicted on his plea of guilty in a Federal district court on each of three counts of an indictment charging that he had defrauded the United States of $2,355.48 by making false and fraudulent claims in violation of 18 U. S. C. 80 [1940 Ed.], and he was sentenced by the United States District Court to imprisonment of one year and one day on each of the three counts with sentences to run concurrently. The court *231 suspended sentence, and plaintiff was placed on probation for one year and one day.[1] The court-martial found him guilty as charged, and he was sentenced “to be dishonorably discharged [from] the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor, * * * for one (1) year.” Upon the recommendation of the Judge Advocate General the confinement portion of the sentence was remitted. This sentence, as modified, was approved by the reviewing authorities and under it plaintiff was separated and dishonorably discharged from the service on July 9,1945. During the intervening years, plaintiff has made various efforts to have the court martial set aside, but all who reviewed the matter found his contentions to be without merit (findings 13-19).
Late in 1951, plaintiff’s application for relief, which included the relief now sought in this court, reached the Army Board on Correction of Military Records established under section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 812, 837, as amended by 65 Stat. 655 (Public Law 220), 5 U. S. C. 191a (1952). Acting on the recommendation of this Board, the Secretary of the Army, on January 8, 1952, directed the Adjutant General as follows:
1. That all the Department of the Army records of HANS goldstein, 14 085 997, be corrected by entry of the notation thereon that it shall be held and considered:
a. That he was separated on a certificate of honorable discharge from the Army of the United States, dated 9 July 1945.
b. That the reduction in grade from Corporal to Private on 29 June 1945 was and is of no force and effect.
c. That he is not chargeable with time lost under Article of War 107.
2. That the Department of the Army issue to hans goldstein, 14 085 997, a certificate of honorable discharge in the grade of Corporal from the Army of the United States, dated 9 July 1945, showing no time lost under Article of War 107, in lieu of the dishonorable discharge of the same date now held by him.
*232 3. That the Department of the Army pay all pay and allowances forfeited as the result of the sentence of the general court martial and subsequent dishonorable discharge.
4. That all other requests of hans Goldstein, 14 085 997, for correction of his military records, be and hereby are denied.
On January 28, 1952, pursuant to this directive, plaintiff was given an honorable discharge as of July 9,1945, and his records were corrected to show that he had been honorably separated from the service on that date. As a result of this correction and the direction of the Secretary of the Army, there became due plaintiff the sum of $307.04 (finding 22) which he had forfeited under the dishonorable discharge. Although offered this amount, plaintiff has refused to accept it. Defendant now concedes that he is entitled to this amount.
Following the aforementioned actions plaintiff filed this suit asking for the further pay which the Board and the Secretary of the Army had denied him. His alleged right to this additional pay is based on two grounds: (1) The failure of the Army to place him in the rank of technical or master sergeant in accordance with a pre-enlistment covenant alleged- to have existed between the Army and plaintiff entitling him to serve as a specialist at one of these higher grades, and (2) Since his dishonorable discharge of 1945 was supplanted by the issuance of the honorable discharge in January 1952, plaintiff takes the position that he was not lawfully separated from the service until the latter date, and is therefore entitled to pay of his rightful rank until that date.
We find no merit in either of plaintiff’s contentions. While he was inducted into the service because the Army was led to believe that he possessed needed skills, the record is void of any “covenants” whereby the Army bound itself in any way to grant plaintiff a particular assignment and rank. Later admissions by the Army that plaintiff may have been misassigned do not constitute such an agreement as would entitle plaintiff to recover by suit the pay of a higher rank or grade. Nor can this court undertake to grant plaintiff promotions or assignments which the Army having jurisdiction over him decided not to make. Orloff v. Willoughby, *233 345 U. S. 83. Moreover, any right which plaintiff might assert in this court under any agreement made with the Army at the time of his enlistment in August 1943, is barred by the six-year statute of limitations applicable to suits in this court. 28 TJ. S. C. 2501. The petition was filed on September 26,1952, which is more than six years after his separation from the service on July 9,1945. This is the latest date that could possibly be selected for the accrual of this type of cause of action.
Nor can it be held that the issuance of the honorable discharge in 1952, in lieu of the dishonorable discharge previously issued, had the effect of erasing plaintiff’s 1945 separation and entitling him to Army pay beyond that date. The honorable discharge was dated July 9, 1945, and plaintiff’s records as corrected show this to be his date of discharge. Both in fact and of record, plaintiff was separated from the Army on July 9,1945.
As mentioned above, plaintiff sought from the Army Board on Correction of Military Records the relief by way of additional pay that he now seeks here and that body denied it. We find no reason to alter the Board’s decision. See Gordon v. United States, 129 C. Cls. 270.
Plaintiff is, of course, entitled to the $307.04 conceded to be due by defendant, and judgment is entered for him in that amount. In all other respects his petition is dismissed.
It is so ordered.
Laeamoee, Judge; Madden, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Marion T. Bennett, makes the following findings of fact:
1. The plaintiff was born in Vienna, Austria, on October 19, 1894, and came to the United States on December 23, 1910. He was granted citizenship on October 3,1934.
2. The plaintiff enlisted in the United States Army at Camp Blanding, Florida, on August 19, 1943, as a private to serve for the duration of the war, plus six months.
*234 3. The plaintiff was over-age for Selective Service but was influenced by radio and poster announcements which stated that the Army needed specialists in scarce categories. He went to the United States Army Area Engineers Office in Miami, Florida, in response to these appeals, to indicate his desire to volunteer as a technician or Army specialist. As a result of this action the Area Engineers Office gave him a letter directed to the Army Officer in Charge, Miami Recruiting Office, as follows:
Date: 10 August 1943
Subject: Assignment for Special Service in the Army. To: Officer in Charge
Army Recruiting Office P. O. Bldg., Miami, Fla.
1. The following named applicant has been found qualified this date for special service in the Army.
Applicant’s Name: Hans (NMN) Goldstein (white race).
Applicant’s Address: 2261 S. W. Seventh Street, Miami, Fla.
For Assignment to: * —A-A-F-ArQF— ASF
Station: EUTC, Camp Claiborne, Louisiana.
Experience: 14 years experience in industrial heating, industrial refrigeration, conditioning of air for industrial processing. Conditioning for Human Comfort, Food Preservation, Storage conditions for foods, goods, etc., Hydration, Dehydration, Purification. Three terms as lecturer and instructor of Physics, Dynamics, Heat, Electricity, Slide Rule, Shop Mathematics, Mechanical Drawing, at Miami Technical High School (Adult Students) for Dade County (Fla.) Board of Public Instruction. ®r Or Tr Cr at University-; Speaks German Fluently; Spanish moderately. Youths Corps, Vienna, Austria.
Civil Occupation: Professional Engineer.
Military Specification Serial Number: -071 —*** DRAETSMAN**:,!Mechanical-Structural-Electric.
2. It is recommended that he be considered for voluntary enlistment, and if such action is favorable, he will be assigned to the Army and Processed in accordance with current instructions regarding special service.
3. This request for Special Service assignment in the Army is to be effective only provided the individual volunteers for enlistment within thirty days from date of this letter, and provided he is qualified for General Military Service undér the provisions of MR 1-9.
*235 4.It is requested that the attached card, Inclosure # 1, be presented to the Induction Station for completion and mailing. .
For the District Engineer: (Original signed here). Issued by: Area Engineer
Miami Beach, Fla.
C. T. Nunley, Je.

Major G E

Executive Assistant.

*Strike out Branch not applicable.
4. On August 16, 1943, the plaintiff was furnished transportation to the Beception Center at Camp Blanding, Florida. At the camp he was given a physical examination, answered questions for the enlistment record and signed the same under oath. The declaration of applicant, attested to by the plaintiff and witnessed by the recruiting officer whose name appears thereon, recites among other things the following questions and answers :
(a) of a felony? No.
7. Have you ever been convicted
(b) of any offense? No.
Have you ever been imprisoned under sentence of a civil court? No.
5. On August 25, 1943, at Camp Blanding, the plaintiff was assigned to the Engineer Unit Training Center, Camp Claiborne, Louisiana. He protested his rank of private as being in violation of what he alleges was a pre-enlistment covenant to give him a technical rating in a special service assignment. Some of plaintiff’s superiors agreed that he had been misassigned. From time to time the plaintiff also secured expressions of interest in his behalf by a number of Members of the United States Congress. Investigations were made and he was given a series of assignments to different camps in an effort to find a proper place for him. Some of plaintiff’s superior officers gave recommendations for his promotion or reassignment. The plaintiff made several attempts to become an officer by direct commission or to be made a technical or master sergeant. He was given a furlough in the fall of 1944 to go to Washington, D. C., in an effort to expedite his application for commission or transfer from enlisted status.
6. On January 13, 1945, plaintiff was examined at Camp Lee, Virginia, Begional Hospital, by an Army neuropsychi- *236 atrist. It was concluded that plaintiff was basically a psychopathic personality and that he possessed habits and traits of character making him unsuitable for further military service. It was further concluded and recommended that he be presented to a board of officers for consideration of a “blue” discharge from the Army under AE 615-368. Two other Army psychiatrists at the McGuire General Hospital in Eichmond, Virginia, concurred in the above findings on April 21, 1945, diagnosing the plaintiff as a “Psychopathic personality (paranoid personality and pathological liar.)”
7. The plaintiff did appear before a board of officers, was given a blue discharge, secured suspension of execution thereof by intervention of a Member of the United States Senate, but soon thereafter was arrested on a charge of fraudulent enlistment.
8. On April 26,1945, a board of officers was appointed at Headquarters, Third Service Command, under Army Eeg-ulations, to review the former board’s proceedings and other facts pertaining to plaintiff’s case and to make appropriate recommendations for his disposition as a soldier. This board met on April 27, 1945, and recommended that plaintiff be tried by court-martial for violation of Article of War 54, Fraudulent Enlistment.
9. A general court was appointed by the Major General in command of the Third Service Command, in which the plaintiff was serving at that time. Plaintiff was arraigned and represented by counsel of his choosing. Article of War 54, with which plaintiff was charged, is as follows:
Art. 54. Fraudulent Enlistment. — Any person who shall procure himself to be enlisted in the military service of the United States by means of willful misrepresentation or concealment as to his qualifications for enlistment, and shall receive pay or allowances under such enlistment, shall be punished as a court-martial may direct.
10. The evidence adduced at the trial on June 8, 1945, showed that at the time of plaintiff’s enlistment he answered “No” to questions as to whether or not he had previously been convicted of any crime, as set forth in finding 4 above. The evidence showed that the plaintiff had been convicted *237 on his plea of guilty in the United States District Court, Southern District of Ohio, Western Division, on each of three counts of an indictment, charging that he had defrauded the United States of the total amount of $2,355.48 in violation of Title 18, United States Code, section 80, and that the plaintiff was sentenced on June 3,1938, to imprisonment of one year and one day in an institution of reformatory type, on each of the three counts, with sentences to run concurrently. The court suspended sentence and the plaintiff was placed on probation for a period of one year and one day.
11. The court-martial found the plaintiff guilty and sentenced him “to be dishonorably discharged [from] the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor, at such place as the reviewing authority may direct, for one (1) year.”
The sentence was approved on June 13,1945, by the Commanding General, Third Service Command. The confinement imposed was remitted, however, upon the recommendation of the Judge Advocate who stated as to plaintiff:
* * * He is 51 years of age and his record in the Army has been poor. Under Army Regulations the Rehabilitation Center is the only place which could be designated as the place of confinement and since it is the unanimous opinion of all persons who have come in contact with the accused, that he is not a proper person for rehabilitation, is of no value to the Service, would be a disturbing factor at the Rehabilitation Center and that his presence there would be detrimental to the rehabilitation of other personnel, it is recommended that the one year sentence of confinement at hard labor be remitted and the dishonorable discharge be executed.
Other misrepresentations by the plaintiff, at the time of his enlistment and applications for direct commission, as to his educational background and qualifications, former employment and date of naturalization, among other things, were not in the charge brought against him by court-martial.
12. On June 26,1945, the record of the trial in the case of the plaintiff was examined and held by a Board of Review, appointed by the Judge Advocate General, to be legally sufficient to support the sentence and on the following day the *238 Commanding General, Third Service Command, was so advised. On June 29, 1945, the sentence as modified was ordered to be executed and on July 18, 1945, the sentence was approved by the Judge Advocate General. The plaintiff was separated from the service on July 9,1945.
13. The Department of the Army sent plaintiff the following letter dated December 15,1945:
The War Department has carefully reviewed your case in the light of representations made by you and in your behalf. The record of your case clearly indicates that you have been guilty of fraudulent enlistment. However, the record also indicates that certain instances of maladministration within the War Department resulted in a failure to permit you to be appropriately assigned during your term of service. It is therefore felt that you deserve another chance and it has been determined to give you that chance.
Provided you have no physical defects which are prone to aggravation by reason of military service; and provided you waive for a period of one year any eligibility for discharge you maw accrue by reason of age, length of service, or Adjusted Service Eating Score, you are hereby authorized to enlist in the Army of the United States in the grade of private for the duration of the present emergency and six months thereafter.
Should you reenlist, your military assignments shall be subject to normal assignment procedures based upon the current needs of the Army. Your subsequent promotions shall be entirely dependent upon your demonstrated abilities and on normal promotion procedures applicable to all enlisted personnel of the Army.
The fact that your reenlistment is authorized does not constitute a commitment on the part of the War Department to give you special or preferential treatment relative to promotion, assignment, or otherwise.
The character of your discharge from the Army after completion of the above authorized enlistment shall be dependent upon the record you establish during that enlistment.
Should you desire to reenlist in the Ai’my at this time, please sign the attached indorsement and present it personally to the United States Army Kecruiting Office, 403 Tenth Street N.W., Washington, D. C.
The War Department does not contemplate further action in your case in the event you do not desire to reenlist in the Army of the United States in the grade of private.
*239 The plaintiff did not enter the service pursuant to the offer and suggestion set forth above. The plaintiff did, however, interest different prominent persons who at various times asked the then Secretaries of War or Army to cause reviews to be made of the legality of plaintiff’s court-martial conviction and sentence. These reviews in each case concluded, in substance, that the record of the trial was legally sufficient to support the sentence and that plaintiff’s contentions were without legal merit.
14. The plaintiff applied to the Army Board on Correction of Military Records, organized pursuant to section 207 of the Legislative Reorganization Act of 1946. The application was referred to the Army Clemency and Parole Board which, on May 14,1948, reviewed plaintiff’s application and recommended that the case not be reviewed by the Board on Correction of Military Records. It was admitted that maladministration within the War Department resulted in a failure to permit the plaintiff to be appropriately assigned during his term of service but pointed out that the fact remained that plaintiff had procured his enlistment by fraudulent concealment, that his sentence was just and every claim of error in the matter of his conviction had been considered and rejected. Plaintiff’s application was then denied by order of the Secretary of the Army.
15. On March 30, 1949, plaintiff filed suit in the United States District Court for the District of Columbia against the then Secretary of Defense, James A. Forrestal, for declaratory judgment and mandatory injunction, claiming that the court-martial sentence and his discharge thereunder were null and void, and sought for other relief. The District Court dismissed the case for lack of jurisdiction over the subject matter and because the complaint failed to state a cause of action upon which relief might be granted. Plaintiff appealed to the United States Court of Appeals for the District of Columbia which, on July 3, 1950, affirmed the judgment of the District Court. The court held that the plaintiff had sought relief which the court was without jurisdiction to grant; that Congress had provided that “court-martial sentences and dismissals or discharges executed pursuant to such sentences upon ‘approval, review, or con *240 firmation as required by the Articles of War, shall be final and conclusive * * * and all action taken pursuant to such proceedings shall be binding upon all * * * courts * * * of the United States * * 10 U. S. C. A. §1521.” The court further stated, “One possible avenue for appellant would be application to the Judge Advocate General for a new trial. It would appear that appellant has not exhausted his possible remedies in this direction.” The court then referred to the Legislative Reorganization Act, 5 U. S. C. A. 191a, providing for the correction of Army records, and stated, “While such correction probably would not affect the validity of the court-martial (40 OP. A. G. 504), it is one mode of relief which may be available to appellant.” Plaintiff applied for writ of certiorari, but this was denied on November 6, 1950, by the United States Supreme Court.
16. The plaintiff, through intervention of a Member of Congress in May 1951, secured a review of his case by the Secretary of the Army who designated Brigadier General E. C. McNeil, a lawyer and special assistant, to investigate and make a report upon it. During the course of this investigation the General conferred with plaintiff on six occasions totaling 26 hours.
17. It was the view of the General that the only remedies available to the plaintiff were an appeal to the Judge Advocate General under AW 53 for a new trial or other relief if it could be shown the court-martial was invalid, or, after that, an appeal to the Board on Correction of Military Records on the grounds of injustice appearing during plaintiff’s Army service. The plaintiff agreed to make such appeals although of the opinion that the Secretary of the Army had authority to give him the relief desired. Instructed to be helpful, the General dictated a statement for use by the plaintiff in his application to the Judge Advocate General for a new trial. The statement was severely critical of the court-martial which was characterized as “a travesty of justice and invalid to support the sentence adjudged.” The General testified, as to this statement, at the trial in this court:
Now, this is no legal opinion by me. I have no status to express any legal opinion as to the sufficiency of a *241 court-martial record. That belonged to the Judge Advocate General.
I wrote this really as an advocate for Mr. Goldstein and gave it to him, suggesting that he could use this or something similar to it in his application to the Judge Advocate General.
* * * I certainly wasn’t stating the Department’s views, and I picked only what I thought were the best grounds for him to attack the record of trial, and this is a statement of it.
18. On or about July 28, 1951, the plaintiff applied to the Secretary of the Army, the Judge Advocate General of the Army and the Army Board on Correction of Military Bec-ords, for relief which included that now sought in this court. The petition for new trial was made out on the regular official application form approved by the Budget Bureau, signed and sworn to by the plaintiff.
Together with the document described above, the plaintiff submitted another document consisting of 30 pages entitled, “Pleadings and Prayer to The Secretary of the Army in the matter of Hans Goldstein, 14085997, July 17, 1951. Attention of: Brigadier General Edwin C. McNeil, Special Consultant to the Secretary of the Army, Washington 25, D. C.” The plaintiff, who signed the document, stoutly maintains that it was an agreement between the plaintiff and the defendant represented by General McNeil. The weight of credible evidence is to the contrary. From its context and style of composition and by comparison with the statement referred to in finding 17, which was admittedly dictated by the General, it is quite clear that the “Pleadings and Prayer” to the Secretary of the Army is the work of the plaintiff. The documents were sent by the plaintiff to the General who transmitted the same to the Judge Advocate General without signifying his agreement to the contents thereof.
19. On September 13, 1951, the Judge Advocate General for the Army took action upon the application of plaintiff for relief under Article of War 53 as re-enacted by Section 12 of an Act of May 5,1950, and denied it, stating, in part:
The entire record of trial has been reviewed, but it discloses no error prejudicial to the substantial rights of the accused: The court had jurisdiction over the accused and *242 over the offense of which he was convicted. The evidence in the record supports the findings and sentence, and the sentence is not excessive.
Good cause for granting relief does not appear; accordingly, the petition is denied.
20. Thereafter, plaintiff’s application of July 23, 1951, together with the so-called “Pleadings and Prayer” to the Secretary of the Army was considered by the Army Board on Correction of Military Records. This resulted in recommendations of the Board to the Secretary, who on January 8,1952, took action as follows:
Memorandum eor the Adjutant General :
Having received and approved the recommendations of the Army Board on Correction of Military Records in the case of former Private hans goldstein, 14 085 997, and under the authority vested in me by Section 207 of the Legislative Reorganization Act of 1946, as amended (Public Law 220, 82d Congress), it is directed:
1. That all the Department of the Army records of hans goldstein, 14 085 997, be corrected by entry of the notation thereon that it shall be held and considered:
a. That he was separated on a certificate of honorable discharge from the Army of the United States, dated 9 July 1945.
b. That the reduction in grade from Corporal to Private on 29 June 1945 was and is of no force and effect.
c. That he is not chargeable with time lost under Article of War 107.
2. That the Department of the Army issue to hans goldstein, 14 085 997, a certificate of honorable discharge in the grade of Corporal from the Army of the United States, dated 9 July 1945, showing no time lost under Article of War 107, in lieu of the dishonorable discharge of the same date now held by him.
3. That the Department of the Army pay all pay and allowances forfeited as the result of the sentence of the general court martial and subsequent dishonorable discharge.
4. That all other requests of hans goldstein, 14 085 997, for correction of his military records, be and. hereby are denied.
21. Pursuant to the foregoing direction, the Adjutant General on January 28, 1952, gave the plaintiff an honorable discharge from the Armed Forces of the United States *243 of America, as of July 9,1945. On tbe back of the discharge there was information headed “Transcript from Enlisted Record,” reciting among other things that plaintiff was born on October 19,1894, at Vienna, Austria, enlisted on August 19,1943, at Camp Blanding, Florida, was separated from the service on July 9, 1945, was classified as to military occupational specialty as a draftsman 070, qualified as a rifle marksman, attained the rank of corporal, and listed as his decorations and citations received in one year ten months and twenty-one days of continental service the American Campaign Medal and World War II Victory Medal.
The letter from the Adjutant General’s office to the plaintiff forwarding the honorable discharge, stated in part:
The Army Board on Correction of Military Records has reviewed the facts in your case and based upon the recommendations of the Board, the Secretary of the Army has directed that your records be corrected to show that you were honorably discharged from the Army of the United States on 9 July 1945; that the reduction in grade from Corporal to Private on 29 June 1945 was and is of no force and effect; further, that you lost no time under Article of War 107. He further directed that your request for all other corrections of your military records be denied.
22. On April 11, 1952, the Adjustment Division of the Army Finance Center wrote to plaintiff as follows:
By action of the Secretary of the Army under date of 8 January 1952 under authority of Section 207 of the Legislative Reorganization Act of 1946, approved 2 August 1946 (60 Stat. 812), as amended by the Act of 25 October 1951 (Public Law 220 — 82d Congress), your military record was corrected to show that you were honorably discharged as a corporal, 9 July 1945.
The records of the Department of the Army indicate that, as a result of such correction, there is due you a net of three hundred seven dollars and four cents ($307.04), as indicated on the attached sheet.
If your records indicate that the amount found to be payable to you, in accordance with the above calculation, is not correct, you are requested to advise this office wherein the amount is incorrect, with copies of your records, and a full statement explaining the alleged discrepancy.
*244 If it is agreed by you that the amount shown above is correct, it is requested that you so indicate by your full signature to the claim certificate attached at the place indicated. Your signature, it will be noted, will establish your claim for the amount found to be due you as a result of the correction of your records; will indicate your willingness to accept the above amount as a full, final and complete settlement and release of any claim you may have against the U. S. on account of the action correcting your military records as indicated above; and will establish the fact that you have not heretofore been compensated by Congress through enactment of a private law or in any other manner.
Upon return of the signed claim certificate, check in payment of the amount due, will be released.
The following statement accompanied the letter of April 11,1952:
CLAIM OF: Hans Goldstein ASN14 085 997
Computation- op Pay Under PL 220
Credits:
1 May 1945 to 9 July 1945, Cpl 0/0 yrs service, without Foreign Service_$151.80
Travel Pay @ 5<t per mile from Camp Lee, Va., to Miami, Florida, 1,032 miles_ 51.60
Mustering-out Pay_ 200.00
Total credits_ 403. 40
Debits:
Family Allowance deductions May-July 1945- $66.00
Withholding Tax (20% of $151.80)_ 30.36
Total debits_ 96.36
Total amount due_ 307.04
(Dishonorable Discharge Payroll was covered by Voucher #701, July 1945 accounts of I. D. Waltz, Major, SN 212-566.)
Claim Certifícate
I hereby make claim in the amount shown above for monetary benefits due me by reason of the correction of my military records, and do agree that acceptance of this settlement shall constitute complete release by me of any claim against the U. S. by reason of the correction of my military records.
I hereby certify and aflirm, with full knowledge of penalties prescribed by law for making false claim against the U. S., that I have not heretofore been compensated by Congress through enactment of a *245 Erivate law or in any manner for the amount claimed erein as a result of the correction of my records.
Date Signature
The plaintiff did not sign this release nor has any of the sum defendant offered him been paid.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover $307.04.
It is therefore adjudged and ordered that plaintiff recover of and from the United States the sum of three hundred seven dollars and four cents ($307.04).

 Other misrepresentations by plaintiff at the time of his enlistment were not in the charge brought against him by the court-martial (finding 11).