Madden, Judge,
dissenting:
This case comes before the court on the parties’ cross motions for summary judgment on plaintiff’s first amended *116 petition. On May 3, 1955, the court rendered an opinion (132 C. Cls. 765) granting the defendant’s motion for summary judgment dismissing the petition. On October 24, 1956, the plaintiff filed his first amended petition setting forth a new cause of action arising out of the alleged arbitrary, capricious and unlawful findings and recommendations of a Physical Evaluation Board rendered on December 27, 1955 (six months subsequent to the court’s decision of May 3,1955), and also out of the Army’s failure to accord plaintiff his right under applicable Army Regulations to a review of the adverse recommendations and findings of the Board by the Army Physical Review Council.
The majority opinion takes the position that despite the proceedings of the Physical Evaluation Board subsequent to the 1955 decision of the court in this case, the plaintiff has not stated a cause of action which is different from that stated in his original petition and that therefore the earlier decision operates as a bar to our consideration of his claim under the amended petition. I cannot agree with this disposition of the case.
Under the original petition considered by the court in this case, plaintiff alleged that the Army Board for the Correction of Military Records had acted arbitrarily and illegally in denying him a hearing and merely advising him that on the basis of his records no basis for such a hearing had been established. The court, on the parties’ cross motions for summary judgment, held that there was no clear showing that the Correction Board had acted arbitrarily or capriciously and that therefore the petition should be dismissed.
Several months after the court’s above decision, the plaintiff, on October 10,1955, received a letter from the Adjutant General prepared by order of the Secretary of the Army, inviting the plaintiff to appear before (1) a Medical Board and (2) a Physical Evaluation Board. On the same day, the Adjutant General, by order of the Secretary of the Army, sent an authorization to the Commanding General of Walter Reed Army Medical Center authorizing the plaintiff’s medical evaluation by a Medical Board and by a Physical Evaluation Board for the purpose of determining whether or not plaintiff was disabled as a result of his military service so *117 as to be permanently incapacitated for active service upon bis relief therefrom on January 20, 1950. It is conceded that the orders of the Secretary of the Army relative to plaintiff’s appearance before a Medical Board and a Physical Evaluation Board were made in connection with the plaintiff’s application for correction of his military records, but on the basis of the orders themselves and the proceedings had pursuant thereto, I am of the opinion that the medical board proceedings were regular and formal proceedings subject to applicable Army regulations and not merely informal proceedings of an advisory nature. I am therefore of the opinion that if those boards acted arbitrarily or contrary to applicable Army regulations, a new cause of action arose which was separate and distinct from that stated in the original petition.
On November 14,1955, the Medical Board at Walter Reed Army Hospital found the plaintiff had been suffering from the following defects on January 20, 1950:
1. 5410 Ulcer, “peptic”, duodenum, chronic, without obstruction, uncomplicated, mildly symptomatic, nondisabling, treated; unchanged. LOD [Line of Duty]: Yes.
2. 6080 Stricture, urethra, following transurethral prostatic resection in 1949 at Brooke Army Hospital (well controlled, calibrates to 26 F. with ease). LOD: Yes.
3. 6100 Hypertrophy, prostate, benign, asymptomatic. LOD: Yes.
4. 7590 Deformity, congenital, joint, 10th thoracic vertebra. LOD: No. EPTS.
5. 3901 Infection, external auditory meatus, chronic, mild, non-disabling, bilateral. LOD: Yes.
6. 4022 Bhinitis and maxillary sinusitis, chronic, hypertrophic, 4035 bilateral, mild, cause unknown; unchanged. LOD: Yes.
7. 7230 Degenerative joint disease (osteoarthritis), multiple, due to unknown cause, cervical spine, with minimal foraminal encroachment, and the right great toe; non-disabling. LOD: Yes.
This board found plaintiff fit for military duty as of January 20, 1950, and ordered his appearance before the Physical Evaluation Board. On December 16, 1955, plaintiff appeared before the Physical Evaluation Board. A member of the 1955 Medical Board testified as a witness and stated that the Board had not given any weight to the findings of *118 the three member Medical Board which met on Jannary 18, 1950, and found plaintiff to be partially and permanently disabled for military service and also had not taken into consideration the plaintiff’s medical history subsequent to January 20, 1950, although it had received records of that history from the Army and the Veterans Administration. The Army records showed that an Army Physical Examination on April 19, 1951, gave plaintiff a physical profile rating of 411 111 rendering him physically disqualified for retention in the Officers’ Reserve Corps.
On December 27, 1955, the Physical Evaluation Board transmitted to plaintiff a copy of the proceedings of the hearing in his case and a letter in which plaintiff was advised that he was entitled to submit a rebuttal statement for consideration by the Army Physical Review Council. The findings and recommendations of the Physical Evaluation Board were that the plaintiff had been fit for military duty on January 20, 1950.
The plaintiff prepared and submitted his rebuttal comment to the adverse findings and recommendations of the Physical Evaluation Board, and, as directed by that Board, marked them for the attention of the Army Physical Review Council. For some unexplained reason the Physical Evaluation Board Proceedings and plaintiff’s rebuttal comment were never submitted for review to the Army Physical Review Council although Army Regulations clearly required that such review should take place and the plaintiff was so advised both at the hearing before the Board and by the Board’s letter of December 27, 1955. An officer’s right to a review by the Army Physical Review Council is guaranteed in Army Regulations AR 635-40A, AR 635-40B and in AR-15-160. One of the primary functions of the Council, established under sections 413 and 414(a) of the Career Compensation Act of 1949, 63 Stat. 824, 825, was to review the findings and recommendations of the Physical Evaluation Boards. Indeed, AR-15-160 provided for a further review of the action of the Council itself by an Army Physical Disability Review Board.
*119 It is tlie plaintiff’s first contention that under applicable Army Eegulations requiring that certain standards of physical fitness and unfitness be applied by the Physical Evaluation Boards, the board acting in plaintiff’s case in December 1855, was required, under the undisputed facts of record and as a matter of law, to find that the plaintiff was 30 percent or more disabled and unfit for active duty as of January 20, 1950. The applicability of those regulations and standards, as well as the Schedule for Eating Disabilities of the Veterans Administration required to be used by the Career Compensation Act of 1949, was discussed in the court’s opinion in the case of Donald T. Patterson v. United States, 141 C. Cls. 435, 447-450. Special Eegulation 600-450-1 in effect on January 20,1950, provides that in making physical evaluations to determine physical fitness for active service of commissioned Army officers the standards in AE 40-100, AE 40-105 and AE 40-115 should be applied; that, however, a person having diseases or injuries which might disqualify him for original appointment may not be disqualified for retention on active duty if (1) the nature and degree of the infirmity is not such as to adversely affect the officer’s performance of duty, considering his age, grade, branch of service and normal duties; (2) the injury or disease is not subject to complications or serious aggravation by reason of continued active duty. The regulation also provides that unfitness for active service by reason of physical disability relates to an incurable disease or an injury or infirmity which is permanent or may become permanent and prevents the reasonable fulfillment of the purpose of the officer’s duties. Turning to the Army Eegulations mentioned in Special Eegulation 600-450-1, AB-40-105 indicates that chronic otitis media renders an officer nonacceptable, as does duodenal ulcer or history of such ulcer with or without operation ; also hypertrophy of the prostate gland, transurethral resection, or urethral stricture; also osteoarthritis of the spinal column. Under AE 40-100 a person is considered unacceptable for even limited service if he is suffering from osteoarthritis, a substantiated history of gastric or duodenal *120 ulcer and a history of transurethral resection of prostate, or of prostatic hypertrophy of any degree. While perhaps the Board would have been justified in finding the plaintiff' fit to perform the duties of an Infantry officer of 51 years of age in 1950 if he had been suffering from one or two of the above listed infirmities, it seems highly unlikely that an officer of plaintiff’s age could be considered fit for active duty as an Infantry officer when he was suffering from six disabilities which under the regulations rendered him unfit to meet minimal requirements for a commission in any component of the Army, and suffering from four infirmities which would have rendered him unacceptable for even limited service. Even conceding the right of the Physical Evaluation Board to apply these standards liberally, the-application made by the Board appears to me to go beyond the concept of liberal application, and be, rather, arbitrary and capricious action in violation of the overall purpose of the regulations. It must be remembered that plaintiff as a lieutenant colonel of Infantry was supposed to be capable of commanding a battalion of Infantry.
In addition, it appears to me that the Physical Evaluation Board erred in refusing to consider any evidence before it relating to the worsening of plaintiff’s condition subsequent to January 20, 1950. In determining whether or not a condition is chronic within the meaning of the Army Regulations and standards of physical fitness and unfitness, particularly by a Board considering the matter several years; after release from active duty, such intervening evidence is pertinent and highly probative and no regulation has been called to our attention which prohibits the Board from giving due consideration to it. See Suter v. United States, 139 C. Cls. 466, in which the armed forces did give consideration to such intervening evidence when it felt it was adverse to the officer’s claim.
Finally, I am of the opinion that the plaintiff had a right to have his case reviewed by the Army Physical Review Council. The regulations governing the Physical Evaluation Board provide for such a review and the regulations cited above, governing the functions and proceedings of the *121 Army Physical Review Council, also provide for such a review. Plaintiff was advised that he was entitled to it and was invited to submit a rebuttal statement to accompany his record of Evaluation Board proceedings when they were transmitted to the Council. Under the regulations, referral of the Physical Evaluation Board Proceedings to the Review Council appears to be automatic with or without a rebuttal statement from the officer in question. Plaintiff submitted a full rebuttal statement. The proceedings and his statement were never referred to or acted on by the Army Physical Review Council. For a discussion of that council and its functions, see our decision in the Patterson case, supra.
For the above reasons I am of the opinion that the plaintiff has stated a new and valid claim arising out of (1) a violation of his rights by the arbitrary and illegal action of the Physical Evaluation Board in not applying the Army standards of physical fitness to the undisputed facts in plaintiff’s case and in failing to take into consideration evidence of the subsequent worsening of his chronic disabilities, and (2) a violation of his right to a review of the adverse recommendations and findings of the Board by the Physical Review Council as provided in applicable Army Regulations. Neither of these rights were claimed in the original petition because the facts giving rise to the claims had not then taken place. I am of the opinion that plaintiff has established his right to recover on the bases stated and that his motion for summary judgment should be granted. Nothing decided in the earlier opinion has any bearing on the issues raised in the amended pleadings and although the proceedings which are the basis for the amended proceeding were initiated in connection with plaintiff’s request to the Correction Board for reconsideration of its refusal to grant him relief, the Army itself treated the new proceedings as independent ones to be carried out under regulations governing the functions and proceedings of the Physical Evaluation Board and the Army Physical Review Council.
JoNes, Chief Judge, joins in the foregoing dissenting opinion.